IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL MCCLANAHAN,            Case No. 5:14 CV 485

         Petitioner,

      -vs-                        MEMORANDUM OPINION

TRUMBULL CORRECTION CAMP,

         Respondent.

KATZ, J.

*Pro se* Petitioner Michael McClanahan filed the above-captioned Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. He is incarcerated in the Trumbull Correctional Camp, having been convicted on July 28, 2004 of two counts of felonious assault with attendant firearm specifications, tampering with the evidence, vandalism, falsification, child endangering, and possession of marijuana. In the Petition, he asserts two grounds for relief: (1) his journal entry contained a one-year gun specification but he cannot reconcile the specification with his stated release date; and (2) he was sentenced to consecutive terms based ON criminal history, when this is his first incarceration. For the reasons set forth below, the Petition is denied and this action is dismissed.

**I. Background**

On March 7, 2004, at approximately noon, Luis Yanzanes was entering the Baho Convenient Store in Akron, when he inadvertently bumped into Petitioner, who was exiting through the same doorway. *State v. McClanahan*, No. 22277, 2005 WL 1398835 (Ohio App. 9 Dist. June 15, 2005). A minor verbal altercation ensued. *Id.* Yanzanes had come to the store with his uncle, Roberto Torres, who was already inside. *Id.* When he observed the altercation, Torres walked over

and tried to diffuse the situation. *Id.* Torres asked Petitioner to leave, but Petitioner instead asked Torres to step outside. *Id.* Torres refused and walked away. *Id.* Petitioner left the store with the woman who had accompanied him there, and Torres and Yanzanes waited a few minutes before they left to give Petitioner time to leave the area. *Id.*

Petitioner did not leave the area, however, but waited with his female companion in a parking lot across the street. *Id.* Yanzanes exited the store first and heard a popping sound. *Id.* He got into his uncle's car and waited for Torres to come out of the store. *Id.* Petitioner fired three more shots, one of which struck Torres in the arm. *Id.* The clerk at the store called police and paramedics to the scene. *Id.* Torres was taken to the hospital and had surgery to remove a .25 caliber bullet from his arm.

Witnesses to the shooting told the police that, after firing several shots from the parking lot across the street, the shooter and his female companion headed toward a nearby alley. *Id.* While the officers were heading in that direction, a man who apparently lived nearby approached them and told them that his neighbor was always shooting guns in his backyard and pointed toward the neighbor's house. *Id.* The officers went to investigate and discovered that the house was actually two apartments and that neither of the individuals in the downstairs apartment matched the witnesses' description of the shooter. *Id.*

The officers went to the upstairs apartment and the door was answered by Petitioner. *Id.* He initially allowed the officers to come in and answered their questions, although he gave them a false name and Social Security number. *Id.* He later terminated the questioning and told the officers to leave. *Id.* While the police secured the area outside, they found several .25 caliber shell casings scattered around the yard and on the porch. *Id.* Communications with officers at the scene

of the shooting confirmed that the shell casings found at Petitioner's residence were the same brand and caliber as those found at the scene of the shooting. *Id.*

When his mother arrived at the scene, Petitioner came outside and Yanzanes, who was waiting there with the police, positively identified him as the shooter. *Id.* Petitioner and his girlfriend were arrested and, after securing a search warrant, police officers searched their apartment. *Id.* They found, among other things, several .25 caliber shell casings and a box of .25 caliber bullets. *Id.* A .25 caliber, loaded handgun was found hidden six feet down inside of the heating duct in one of the bathrooms. *Id.* One shot was in the chamber, ready to be fired. *Id.* Following their arrest, gunshot residue tests were performed on both Petitioner and his girlfriend. *Id.* Each test confirmed the presence of gunshot residue on their hands. *Id.*

Following a jury trial, Petitioner was convicted on July 21, 2004 on two counts of felonious assault with attendant firearm specifications, tampering with the evidence, vandalism, falsification, child endangering, and possession of marijuana. *Id.* He was sentenced on July 28, 2004 to an actual three (3) year mandatory sentence for the firearm specifications which were merged for sentencing; four (4) years for each Counts One and Two for felonious assault; one (1) year for tampering with evidence in Count Three; six(6) months for vandalism in Count Four; six(6) months for falsification in Count 6; and six (6) months for child endangering in Count 7. In addition he was fined $100.00 for possession of marijuana in Count 9. (Pet. Doc. No. 1-2 at 2). The court determined, pursuant to Ohio Revised Code § 2929.14(E)(3) that consecutive sentences were needed to protect the public because "the harm was so great or unusual that a single term does not adequately relflect the seriousness of the conduct; and the offender's criminal history shows that consecutive terms are needed to protect the public." (Pet. Doc. No. 1-2 at 2). The court ordered

"that the one year mandatory sentence imposed in this case for possession of a firearm be served consecutively and not concurrently with the sentences imposed in Counts 1, 2, and 3 [for felonious assault and tampering with evidence]." (Pet. Doc. No. 1-2 at 3). Counts 1,2, and 3 are to be serve consecutive to each other but concurrent with his sentences for Counts 4, 6, 7, and 9 (for vandalism, falsification, child endangering, and possession of marijuana. The Court concludes by stating that "the Defendant is to serve a total of twelve (12) years in the Ohio Department of Rehabilitation and Correction." (Pet. Doc. No. 1-2 at 3). The court's mention of a "one year mandatory sentence" for the firearm specification on page three of the journal entry (Pet. Doc. No. 1-2 at 3) was inconsistent with its imposition of a "three year mandatory sentence" for the firearm specification on page two of the same journal entry (Pet. Doc. No. 1-2 at 2).

Petitioner appealed his conviction to the Ohio Ninth District Court of Appeals, but he did not seek clarification of the discrepancy. He asserted five assignments of error:

> I. The Trial Court erred in sentencing Appellant to [more] than the minimum sentence and to consecutive terms of imprisonment in violation of *Blakeley v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, (June 24, 2004)."
>
> II. The Trial Court erred in dismissing a juror for cause without putting on the record the basis for the excusal.
>
> III. The Trial Court erred in admitting the hearsay testimony of non-testifying individuals in violation of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (March 8, 2004) and the Appellant's right to confrontation.
>
> IV. The Trial Court erred in sentencing Appellant to consecutive sentences.
>
> V. The convictions should be reversed because they are against the manifest weight of the evidence and because the evidence supporting them was insufficient as a matter of law to prove a conviction

-4-

      beyond a reasonable doubt.

The Court affirmed his convictions and sentence on appeal. *Id.* He then appealed to the Ohio Supreme Court. After issuing *State v. Foster*, 109 Ohio St.3d 1 (2006), the Supreme Court reversed the Court of Appeals decision with respect to Petitioner's sentence and remanded his case for resentencing consistent with *Foster*. *Id.*

    The trial court held another sentencing hearing on June 1, 2006 and issued Petitioner's new sentencing entry on June 13, 2006. This entry stated unequivocally that the court imposed a three year mandatory sentence for the firearm specification. Thereafter, Petitioner filed a petition for post-conviction relief and appealed from the trial court's denial of his petition. He raised one assignment of error:

> The Trial Court erred in sentencing Appellant to more than the minimum sentence and to consecutive terms of imprisonment.

He argued that the trial court's application of the remedy provided by *Foster* violated his due process rights. In addition, Petitioner argued that the trial court's actions violated the rule of lenity. The Court of Appeals found the arguments lacked merit and affirmed the trial court's decision. *State v. McClanahan*, No. 23380, 2007 WL 1138426 (Ohio App. 9 Dist. Apr. 18, 2007). He did not appeal this decision to the Ohio Supreme Court.

    In September 2009, Petitioner filed a Motion for Re-Sentencing because his sentence did not include a valid post release control notification provision. *State v. McClanhan*, No. 25284, 2010 WL 4884502 (Ohio app. 9 Dist. Dec. 1, 2010). The state conceded that the sentence was defective and the trial court conducted a second re-sentencing hearing on October 29, 2009. The court issued its new sentencing entry on November 5, 2009, which again, contained a three year mandatory sentence for the firearm specification. Petitioner did not appeal this sentence.

On December 28, 2009, Petitioner filed a Motion for Appealable Order stating that the court's sentencing entry did not dispose of one of the counts in his indictment. *Id.* On February 4, 2010, the court issued a *nunc pro tunc* entry, indicating the missing count was dismissed during the trial pursuant to Ohio Crim. R. 29. *Id.*

On March 5, 2010, Petitioner appealed the trial court's February 4, 2010 *nunc pro tunc* entry. *Id.* He asserted one assignment of error:

> The Trial Court erred in sentencing Appellant to more than the minimum sentence and to consecutive terms of imprisonment.

He argued that the Ohio Supreme Court's decision in *State v. Foster* is unconstitutional and that, by applying *Foster* to him, the trial court violated his due process rights. The Court of Appeals determined that Petitioner was appealing the *nunc pro tunc* entry and *nunc pro tunc* entries relate back to the date of the entry they correct. Therefore, even though the trial court issued its *nunc pro tunc* entry on February 4, 2010, the entry must be treated as if the court had issued it on November 5, 2009, the date of the sentencing entry it was correcting. Consequently, on December 1, 2010, the Court held that the appeal was not timely filed. Petitioner did not appeal this decision.

Petitioner then returned to the trial court and filed numerous Motions contesting his sentences.[1] He filed a Motion to Comply with Superceding Order/Motion on September 23, 2011 in which he challenged his consecutive sentences, and asserted for the first time that his three year firearm specification was contrary to the initial verdict in the case. The trial court denied the Motion on October 3, 2011 stating in pertinent part that the argument pertaining to his firearm specification should have been made in 2005 and is now barred. *See State of Ohio v. McClanahan*,

---

[1] Summit County Court of Common Pleas dockets and case filings can be viewed at: http://www.sccjis.co.summit.oh.us/Search.aspx.

No. CR 2004 03 0799(A) (Summit Cty Ct. Comm. Pl. order issued Oct. 3, 2011).

Petitioner filed a Motion to Take Judicial Notice on October 14, 2011. *Id.* He argued that the court could only impose a one year sentence for his firearm specifications. *Id.* Again, the court indicated this argument should have been asserted in his 2005 or 2007 appeals. *Id.* Petitioner filed an appeal of the denial of this Motion on November 22, 2011; however, he failed to pay the filing fee for the appeal after being ordered to do so and the appeal was dismissed on February 28, 2012. *Id.*

Undeterred, Petitioner filed a Motion for Judicial Release, a Motion for Multiple Felony Convictions to be served Concurrently, and a Motion for Reconsideration. All of these Motions were denied. *Id.*

Petitioner subsequently filed a Notice of Plain Error. *Id.* In this Notice, he asserted that while the 2004 sentencing entry indicated consecutive sentences were based on his history of criminal conduct, he had no criminal history. *Id.* The court denied the Notice as barred by *res judicata*. Petitioner appealed the decision. That appeal is still pending.

Finally, Petitioner filed a Motion to Correct Void Sentence on March 21, 2014. *Id.* He asserted the journal entry changed his mandatory firearm specification sentence from one year to three years. The Motion was denied. The trial court indicated it lacked jurisdiction to rule on the Motion while Petitioner's appeal was still pending.

Four years after this last appeal, Petitioner filed the within Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. He asserts two grounds for relief:

> 1. Defendant [sic] journal entry is a one-year gun spec. In 2004 defendant was sentenced to a one year gun specification/ the journal entry of page 3 of 3 clearly states this fact, as well as the jury verdict forms, which all 12 jurors signed for a one year gun spec. On Jan.

-7-

> 3, defendant learned that his outdate was incorrect. The Bureau of Sentencing & Computation have confirmed the one year gun specification but say the Summit Co. Clerk of Courts hasn't sent the journal entry since 2004.
>
> 2. Defendant is sentenced to consecutive terms based on past criminal history. This is defendant's first time being incarcerated.

(Pet. Doc. No. 1 at 5-6). He indicates he exhausted his state court remedies by writing letters to the Governor of Ohio and the judge who presided over his case, and by filing a complaint with the Akron Bar Association. He claims Summit County Common Pleas Court Judge Tammy O'Brien told him it was "too late to bring this issue to the court or any court." (Pet. Doc. No. 1 at 11).

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2254, was signed into law on April 24, 1996 and applies to habeas corpus petitions filed after that effective date. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *see Woodford v. Garceau*, 538 U.S. 202, 210 (2003); *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999). The AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, and 'to further the principles of comity, finality, and federalism.'" *Woodford*, 538 U.S. at 206 (citing *Williams v. Taylor*, 529 U.S. 362, 436 (2000)). Consistent with this goal, when reviewing an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. *Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 774-76 (6th Cir. 2008). The Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A federal court, therefore, may not grant habeas relief on any claim that was adjudicated on the merits in any state court unless the adjudication of the claim either: "(1) resulted

in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Wilkins*, 512 F.3d 768, 774 -76 (6th Cir. 2008).

A decision is contrary to clearly established law under §2254(d)(1) when it is "diametrically different, opposite in character or nature, or mutually opposed" to federal law as determined by the Supreme Court of the United States. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). In order to have an "unreasonable application of ... clearly established Federal law," the state-court decision must be "objectively unreasonable," not merely erroneous or incorrect. *Id*. at 409. Furthermore, it must be contrary to holdings of the Supreme Court, as opposed to dicta. *Id.* at 415.

A state court's determination of fact will be unreasonable under §2254(d)(2) only if it represents a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). In other words, a state court's determination of facts is unreasonable if its finding conflict with clear and convincing evidence to the contrary. *Id.* "This standard requires the federal courts to give considerable deference to state-court decisions." *Ferensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007). AEDPA essentially requires federal courts to leave a state court judgment alone unless the judgment in place is "based on an error grave enough to be called 'unreasonable.'" *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

### III. PROCEDURAL BARRIERS TO HABEAS REVIEW

Before a federal court will review the merits of a petition for a writ of habeas corpus, a petitioner must overcome several procedural hurdles. Specifically, the petitioner must surmount

the barriers of exhaustion, procedural default, and time limitation.

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see Baldwin v. Reese*, 541 U.S. 27 (2004).  Exhaustion is fulfilled once a state supreme court provides a convicted defendant a full and fair opportunity to review his or her claims on the merits.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

To be properly exhausted, each claim must have been "fairly presented" to the state courts. *See e.g. Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Frazier v. Huffman*, 343 F.3d 780, 797 (6th Cir. 2003).  Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim.  *Wagner*, 581 F.3d at 414.  Specifically, in determining whether a petitioner "fairly presented" a federal constitutional claim to the state courts, courts should consider whether the Petitioner (1) phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) relied upon federal cases employing the constitutional analysis in question; 3) relied upon state cases employing the federal constitutional analysis in question; or (4) alleged "facts well within the mainstream of [the pertinent] constitutional law."  *See Hicks v. Straub,* 377 F.3d 538, 553 (6th Cir. 2004) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). For the claim to be exhausted, it must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law.  *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984).  Moreover, the claim must be presented to the state courts under the same legal theory in which it is later presented in federal court.  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  It

-10-

cannot rest on a legal theory which is separate and distinct from the one previously considered and rejected in state court. *Id.*  This does not mean that the applicant must recite "chapter and verse" of constitutional law, but the applicant is required to make a specific showing of the alleged claim. *Wagner,* 581 F.3d at 414.

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address because the Petitioner did not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, the state judgment is not based on a resolution of federal constitutional law, but instead "rests on independent and adequate state procedural grounds."  *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition.  *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir.1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state procedural grounds for a state court decision absent a clear statement to the contrary.  *See Coleman*, 501 U.S. at 735.

To determine if a claim is procedurally defaulted, the court must determine whether: (1) there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) whether the state courts actually enforced the state procedural sanction; and (3) whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986).  A claim that is procedurally defaulted in state court will not be reviewed by a federal habeas court unless a petitioner can demonstrate cause for

the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *See Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). If a petitioner fails to show cause for his procedural default, the Court need not address the issue of prejudice. *See Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review only federal claims that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

## III. Discussion

Petitioner's two grounds for relief are unexhausted. He asserted them for the first time in post judgment motions filed from 2011 to the present date. While it appears that the appeal of his first ground was dismissed for failure to pay the Ohio appellate court's filing fee, the appeal of the denial of his second ground for relief is still pending in the Ohio Ninth District Court of Appeals.

As explained above, a petitioner cannot obtain federal habeas relief unless he has completely exhausted his available state court remedies to the state's highest court for each of the pending claims. *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001); 28 U.S.C. § 2254(b)(1)(A). The United States Supreme Court has emphasized that the "interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claim," since "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Rhines*

*v. Weber*, 544 U.S. 269, 273-74 (2005)(citations omitted). Accordingly, where a habeas petition contains unexhausted claims, there is a "strong presumption" in favor of requiring a petitioner to pursue his available state remedies. *Granberry v. Greer*, 481 U.S. 129, 131 (1987); *see also O'Guinn v. Dutton*, 88 F.3d 1409, 1412 (6th Cir. 1996) (stating that "the Supreme Court has been quite clear that exhaustion is the preferred avenue and that exceptions are to be for narrow purposes only"). Because Petitioner has a pending appeal concerning one of the issues asserted in this Petition, he cannot proceed with his habeas petition.

## IV. Conclusion

Accordingly, this action is dismissed without prejudice pursuant to Rule 4 of the Rules Governing Section 2254 Cases. Further, the Court CERTIFIES pursuant to 28 U.S.C. §1915(a)(3) that an appeal from this decision could not be taken in good faith, and there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253; Fed.R.App.P. 22(b).

IT IS SO ORDERED.

s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE